We will now hear the first case Fuery v. City of Chicago. Thank you so much. Good morning. Good morning, your honors. May it please the court. My name is Jared Hasegwed. Here on behalf of the plaintiff appellant, Nicole Tomascovich, I would request reserving three minutes for rebuttal. Okay, you need to watch the the countdown, and when it gets to three then your rebuttal time. Thank you, judge. Judge, this case is about power, prejudice, and proportionality. The appellant submits that the district court did not have the power to use her inherent authority to vacate the judgment in her favor of $260,000. That even if that power did exist, that nothing that happened during the trial, as alleged by the district court, had a logical nexus to the sanction that was imposed. Exactly. Mr. Kasaglad, putting aside this case for a moment, if a trial comes to an end and a judge looks back over the whole of the trial and thinks the only reason that this plaintiff won was because she broke the rules, is it a punitive action to overturn the verdict? Yes, judge. If I understand your question, it can be done through the federal rules of civil procedure, which define the exclusive mechanisms for district courts to... Exclusive mechanisms? Well, I would submit that they are the exclusive mechanisms under these circumstances. Has this been held? The Supreme Court has repeatedly said that inherent authority remains despite it has to be exercised carefully. But what's the basis for saying these are exclusive? Well, exclusive as far as it being a civil sanction. Again, it's unprecedented in the jurisprudence for a court to use their inherent authority to vacate a jury's verdict and then enter judgment in favor of the opposing party. Do you agree that the judge would have had the power to enter dismissal for pre-trial misconduct? Inherent authority? Yes, for pre-trial... How about misconduct during the trial? Yes. So your theory seems to be that by letting the case go to the verdict, go to the jury and return a verdict, the district judge lost the power that she had up until that point. Is that right? Under her inherent authority, that's what I from. That comes from Goodyear Tire? That's not what Goodyear Tire says. And it also seems to create a really strange incentive for district judges who are facing this kind of a dilemma and trying to decide whether to let a case go to the jury or not. If you think the case is close, I mean, a defense verdict would have spared the need for the most dramatic sanction that was power if she lets it go to the jury. The federal rules of civil procedure provide the power. It's not that the power to vacate the judgment is lost, it's that the district courts have to follow the federal rules. But your rationale is completely in tension with chambers against NASCO, among other cases, where the Supreme Court has said, yes, the federal rules of civil procedure are there, no, you shouldn't jump right away to inherent power, but in the final analysis there is inherent power. So where do the federal rules negate the inherent power, as Judge Hamilton was pointing out, that exists up until the case goes to the jury? I wouldn't describe it as a negation under the circumstances. It's just where the federal rules are available, the district court must follow them over the use of her inherent authority. And that's exactly what chambers discusses. Is a motion necessary for a judge to enter this kind of a sanction? No. The judge can do it sua sponte on her own within 28 days of the verdict, according to the federal rules of civil procedure. So why would it matter what was included or not included in the Rule 50 motion if a judge can do it sua sponte? If the analysis is being done under the inherent authority, it doesn't. What was included in the motion is irrelevant. The district court on her own can sua sponte, issue an order appropriately within the constructs of the federal rules. But not if there's another motion pending? Including if there's another motion pending. The problem becomes that without following the federal rules, well the rules include procedural protections to litigants and the parties. But that's always true. There's Rule 37, there's Rule 11, there are other, there's Rule 41, there are all kinds of rules. And nonetheless, and so there's overlapping authority sometimes. I actually have two questions for you that I think, you know, if we can park this to the side. I'm not telling you to give up your argument. But first of all, I understand the judge, when she reflects on the full trial, to have come to the conclusion that Ms. Tomascovich herself was not honest with the court during this exchange about whether she was instructed by her lawyer about what she could say or not say. First she says no, then she leaves the courtroom, then she comes back and says yes. So that's one big problem. The other issue, which I think I'd like you to address, is there's a point before the trial's over where the district court judge says, um, I think that there are grave problems, I'm paraphrasing, there are grave problems with the attorney's conduct, but I'm not at the point of thinking that that should be attributed to the client. And then when she does issue this order, vacating, denying the attorney's fees, but vacating the judgment, there's very little explanation, if any, about why she's changed her mind. So I want to know, first of all, against you, the significance of the fact that she does clearly seem to have decided that this is not a case of exclusive lawyer blame, this is a case where the client herself shares some of the responsibility, and yet there's very little explanation. Sure, so as far as the allegation that Ms. Tomascovich lied to the district court, we would submit that that's not supported by the record. It's true that there is a conflict between her answers, and that when she initially answers questions, she says no, and comes back into the courtroom and says, actually... So you're arguing with the fact-finding? Correct. I don't know how you can do that given this record, frankly. Well, based on the entire exchange between Ms. Tomascovich and the district court, it's clear that the district court felt her questions were very clearly asked, but that when we actually look at what questions were asked, Ms. Tomascovich did not understand it. She actually asks the district court, you mean the stipulations? And says no, and then comes back and clarifies that she understood the court's questions to be about right then, and that she had, in fact, actually been advised of these things. What's not supported by the record is the district court's conclusion that her trial counsel had sort of poisoned her testimony and advised her outside the courtroom to come in and change her answers. There is no evidence in the record to support that. You don't think that's a reasonable inference from the circumstances? It's a possible inference, but if we're going to be investigating out-of-court conduct, the district court's going to investigate out-of-court conduct during the trial. Mr. Kostoglad, let me just... The problem that I've got, I'd like you to get back to Chief Judge Wood's question as well, because I share those. But the problem that I'm having with this kind of an explanation with this particular incident, as the district judge said, in every one of the scores or even hundreds of incidents over the course of the trial, Ms. Kurtz and her clients offered explanations. But given the overall sustained pattern, it was impossible for anybody to treat those explanations as honest. And I don't see in the plaintiff's brief any really direct engagement with that fundamental problem in the case. That the plaintiff's explanations cannot be considered credible? And Kurtz's explanations for the repeated systemic violations of the orders in limine, the rules of evidence, and in essence, basic fair trial procedures. If they're characterized in that fashion, I would agree. But again, the district court made findings throughout the trial that are somewhat in conflict, and as Judge Wood pointed out, are unresolved in the opinion, because she changes her mind after reflection about what happened during the trial. She... Well... Not just from cumulative effect. Judge Ruffner? Look, what has been done in the brief, the plaintiffs have gone through each alleged transgression piecemeal, and each one you've tried to explain away. But the harm to the court here is in the sum of the parts, the sum of the parts, when you put it all together. And when you do that, and the district court makes a finding that there was merit to these claims, and that the claims that were brought were not frivolous, that it was the attorney's... That's different. That's a different point, which is why you didn't get the attorney's fees. But the one thing she doesn't explain is that she, before the trial ends, she is not quite at the point of thinking that any sanction that might be imposed should run against the clients as well as lawyers. But then when she does impose a sanction at the end, it is clearly against the client. I assume, by the way, that the client would have a malpractice action against this lawyer if the lawyer's misconduct caused the client to lose a quarter of a million dollar verdict. But that would be for some later proceeding, not this one. The absence of that change of heart, the explanation is somewhat troubling to me. But you look at the, again, as Judge Rover just said, the sum total of dissembling, and that's a permissible inference, maybe not the only one, but a permissible inference at the client level, shifting explanations from the lawyer, out and out, lack of candor. It's a very troublesome story, and constant flouting of these motions in limine. Constant. And if it pleases the court, I would try to reserve the rest of my time for rebuttal. I don't know how you all are dividing this up, but since you've taken the laboring aura on this, counsel, let me ask you whether I get the impression from your brief that you think it's implicit that personal misconduct by the plaintiff is necessary to support the sanction of dismissal. Do you think that's correct? Not always, but after a jury verdict's been rendered, the only precedent that the courts have found a basis for taking away a verdict is premised on fraud, forgery, things that the plaintiffs have been personally involved in, because it's a punishment direct to the plaintiff. The idea that the district court can engage in group punishment of the attorneys and the plaintiffs combined, looking at the propensity of the attorney to commit misconduct in other cases, and fashioning a remedy on that basis is inappropriate. On that basis, if you were in Judge Ellis's position, given her findings, and given the history, including the Rojas case, what would have been an effective sanction in this case? Against the attorney, if it was for wasted time, there were attorney's fees available to compensate the defendants. If it was for some kind of unethical issue, which she discussed in her opinion, there's censure, there's referring them out. Censure? We know that didn't work, right? Well, I mean, again, I'm not in a position to decide how to punish other lawyers. I'm not asking you to decide, but you were arguing that the sanction here is disproportionate, and I'm asking you, given the track record here, what would have been sufficient? Again, a punishment directed at the defendant, and giving the defendant the benefit of $260,000 without any explanation, that does not make sense. All right, you can save the rest of your time. Mr. Flaxman. Thank you, Your Honor. May it please the Court. Let me try to have a different spin on some of the questions than some of the answers. The appropriate sanction, if the district judge felt the way she said she felt, and I don't doubt that, would have been to grant the new trial. That's the sanction that was opposed in that other case, where Judge Holderman made a finding that the attorney misconduct caused the jury to find that the jury finds in favor of one of the plaintiffs and awards damages, and then we're asked to overrule the Seventh Amendment and set that aside. In the history of sanctions in the world, or in our system, we've been unable to find any case where, as an attorney sanctioned, a judge sets aside a jury verdict and enters judgment for the defendant. That's just a sanction that has never been imposed, that wasn't imposed in the Rojas case. The traditional sanction, if there is attorney misconduct of that nature, is to grant a new trial and require the trial. There was no explanation for why the sanction was shifted from the lawyer to the clients, and I think there is no... How about the fact that some of them were lying? Well, I mean, it's easy to say that they're lying, but did they have a fair opportunity to be heard on whether they were lying? The district judge was making findings based on statements made in the heat of battle by people who were not professional witnesses, who were testifying about something that happened five years before, and there wasn't an opportunity to be heard, there wasn't notice, there wasn't representation by counsel other than trial attorney who might have had a conflict in representing her clients and herself. It's easy to say that... It's easy to jump to the conclusion that there was false statements made to the court, but there wasn't not a fair determination of that, especially when part of the evidence about the false statements was, what did your lawyer tell you about the motion in limine? Usually clients aren't asked what their lawyer... I know you made that point in the brief, but didn't Ms. Kurtz herself defend herself first by revealing the content of those communications from her perspective? I'm sure that... That's the way I read the transcript, but maybe I missed something. Was she entitled to waive it for the client? Was it proper for the judge to conduct an interrogation of the client who wasn't represented by anyone at that stage? You think the court should have either let this go or stopped everything and get new lawyers for each plaintiff to deal with this separately? No, the judge should have granted a mistrial. If the judge felt that the conduct was sufficiently egregious, the judge should have granted a mistrial. What do you make, Mr. Flaxman, of the history with the Rojas case and the ineffectiveness, apparently, of the sanctions in that case? Well, what I make of it is that that was used to show wrongdoing rather than as consideration in the penalty phase. In criminal cases... We have looked at... When we've looked at sanctions against parties and dismissal, you have to look at alternatives. You have to look at lesser sanctions. And here we have a history with Attorney Kurtz of lesser sanctions, including even a new trial setting aside verdicts and a fee awards of hundreds of thousands of dollars, being ineffective in deterring this kind of misconduct. But my point isn't that it should be considered or could be considered in opposing the sanction, but it should be considered in determining guilt or innocence. In a criminal case, if somebody has 13 arrests and convictions for selling drugs, the jury doesn't hear about, well, if he did it 13 times, he did it again. No, but if a witness has repeated convictions for perjury, those can tend to come in to impeach credibility, right? Well, and also in a criminal case, if we're talking about the sanction, actually all that stuff does come in at the sentencing stage. The pre-sentence investigation report will look at everything. And that's correct. And that's what this judge was trying to figure out. What can I that's going to make a dent? It's a fair reading, I think, of the district judge's order is that she was considering the wrongdoing, the propensity to wrongdoing in the guilt, innocence stage, rather than in the sanction stage. And that's clearly both. Ms. Tomichesk had her own issues with the truth. She testified under oath, both that she was psoriasis and rheumatoid arthritis were due to the accident. She testified that she owed 400,000 medical bills, even as the lawyer was subjecting to the questions. And the judge was admonishing her that her lawyer was violating the rules and that plaintiffs were responsible for any misconduct. I have tried and tried to think of what else could have gone on here. What else? I mean, this trial was a real nightmare. I wholeheartedly agree with that characterization of the trial, but the judge should have granted a mistrial earlier when this stuff was going on, rather than waiting for the jury to see how the jury would do. And when the jury found in favor of Ms. Tomichesk, who was very well cross-examined, they had an ample opportunity to consider her credibility, and they gave her the $260,000 of her medical bills. I think that was the appropriate result for Ms. Tomichesk. And then we then have the Seventh Amendment problem of saying, well, the jury found in favor of her hearing everything, but we're not only going to set it aside, we're going to enter judgment. You didn't really argue that, and actually, you're over time, so you need to finish up. Thank you. Thank you very much. Ms. Mitrieva? No. Oh, sorry. Mr. Saltzman. I'm going to waive my time and let rebuttal. Okay, that would be fine. Thank you very much, Mr. Saltzman. Sorry, I didn't mean to overlook you. So now, Ms. Mitrieva. Good morning, Your Honors, and may it please the Court. I would go straight to the question that Your Honors had about what you call the change of heart of the district court judge after she denied the motion to dismiss. On Monday morning, it was December 14th, it was in the middle of trial. So, no, but that does bother me, because to do something as drastic as take a verdict away from somebody, I would have expected a memorandum or an opinion saying, now that I've had a chance to reflect on the full trial, I make the following findings about where the clients were responsible, and in particular, Ms. Tomaskiewicz, the person who the jury ruled for, and really explain why this very significant, we all agree it's a very, very significant sanction, why that was the right to speculate. Well, Your Honor, I would disagree with your characterization that we are left to speculate. With all due respect, at the moment when the judge denied the motion to dismiss, and I have the transcript in front of me right now, so she was denied the motion to dismiss and the motion for a mistrial, but in the same breath, the judge was saying, I'm going to take the motion for mistrial under advisement to the end of trial. Certainly, the grounds that were raised in the motion for mistrial could certainly be raised in the motion for new trial, but let's finish this up. There are plenty of options once the trial is concluded to deal with the misconduct that's happened, and we will deal with that at the end of trial, so I'm not letting it go. But she also says, when there's a motion, the defendant's moved to dismiss with prejudice or mistrial, she says, it is a very severe sanction, and it punishes the plaintiffs for the conduct of their attorney, which I don't think is appropriate. I just think that dismissal really goes at the wrong party and hurts the plaintiffs, and the issue thus far has been with the conduct of the attorney. So she does say you can re-raise it, and she reads this foliation issue, but she never explains how she got over that view and moved over, aside from just, bam, we're taking $260,000 away from you. Again, with all due respect. May I just add to that, please? After she made that statement, how many more, let's call them misrepresentations, occurred? And that was, thank you, that was where I was going with it, so we don't have to speculate as to the reasons, because on pages 9 and 13 of her sanctions opinion, the judge cited the additional basis for her sanction decision, the expert testimony of Stein on the ultimate issue of fact before the jury, and that was the issue that was of critical importance as far as the city's concerned, because that was the only reason the city was defending the trial in that particular instance. The expert for all three plaintiffs testified violating the motion on limine that during the altercation, Zura was acting as a police officer, and that word by word violated the pretrial motion on limine. It was a very critical violation, was extremely prejudicial violation as far as the city is concerned, that happened after the court denied the motion to at that point at which the court took on the advisement. That was not the only misconduct that occurred after the initial denial of dismissal motion. But it's the lawyer's misconduct that you're talking about, not Mr. Moskovich, and so explaining, I just think that dismissal really goes at the wrong party when you say that the right party has done some more things. I find a gap. The law is clear that the lawyer is the agent of the plaintiff. But she's rejected that thought in the passage that I, you know, yes that's true, but in many sanction situations, trial judges will nonetheless sanction the lawyer quite specifically, not the client. So there's an option for the judge, and she has said, I'm going to exercise that option. And again, that was done, in the middle of the trial. It was an interlocutory decision that did not take into account all of the extent of the misconduct. I understand, but where does she say, I'm revisiting my thought that this is, that going to the clients is the wrong person. She doesn't explain it. Maybe we can all read this record and come up with a pretty good guess as to why she did it. But usually we require district judges to explain their thinking. The court took a conservative approach and a very patient approach. Again, in the middle of the trial, when the motion for dismissal is filed on Sunday, the trial is ongoing. The court is ruling on it on Monday morning. The jury is in the box waiting. The judge, in the midst of that situation, made the decision at this particular time, I'm denying dismissal, but I'm not letting the issue go. But when you say the issue thus far has been with the conduct of the attorney, I would have expected her to issue some order saying, as of the time I last thought about this, it was really the attorney, but since then I've had a chance to look at the conduct of the client as well. She bears enough responsibility that this extremely severe sanction is appropriate. Again, when we look at the 30-page opinion of the district court judge that's very detailed, she is looking at the mosaic of whatever happened, at the entire picture that she's looking back at what happened during trial. She's making a very thoughtful decision of how, in her opinion, the trial was tainted by the misconduct of both plaintiff's autonomous cards and plaintiff's. She is absolutely following the law that is clear everywhere that the lawyer is an agent of the plaintiff. It is absolutely accurate that at one point the district judge did advise that that is the kind of sad thing as a party, is that you are bound by whatever your lawyer does. This is all black-letter law, but your opponents point out that one can scour the reported decisions, and seeing a district court take this action, wipe out a jury verdict, instead of granting a mistrial, allowing a new trial, instead of punishing the lawyer under Goodyear, you could come up with an award of attorney's fees that would be attributable to the misconduct. There are many tools in the toolbox. The city didn't cite any case where this has happened. Your Honor, in this circuit, it is accurate that there is no case exactly like this. And again, plaintiffs are not... Like ever. That's quite a statement. But in other sister circuits, there are cases, and I looked again, I have to confess, after plaintiffs made this accusation in their reply, I looked beyond the Seventh Circuit, and there are cases outside of the circuit, which I would be happy to cite to the court, in which, for instance, in the Tenth Circuit in 2005, there was a claim for excessive force. Defendants brought a motion before the end of the jury trial to dismiss the plaintiff's claims as a sanction for misconduct. The court denied it. The jury found in favor of the plaintiff, but awarded nominal damages. Defendant again filed a post-trial motion asking for dismissal, a judgment as a matter of law, dismissal as a sanction. The court denied it. It went on appeal to the Tenth Circuit, and the Tenth Circuit said the district court abused its discretion. It should have granted the dismissal with prejudice based on, in that particular case, it was perjury. But that's a somewhat... A 50A and a 50B operate in a different zone, actually. That was under inherent authority. The motions were brought under inherent authority. And so the only difference between that situation in the Tenth Circuit and here is the amount of damages. Nominal versus $260,000. Yes, but that was ill-gotten. It was ill-gotten because, again, with Tamaskovich, she was the only plaintiff whose picture, the day after she got out of a surgery, spinal surgery in the hospital bed, that was expressly barred by the motion and limine, was full-blown on the Chicago Tribune website. The Chicago... That was day in the life video. Yeah, there was a photo from the day in the life video. And that was not public information. And it was not public information. And the court suspended the trial for the entire day until 3 p.m. It conducted, basically, a hearing, an evidential hearing, to what happened. It called the Chicago Tribune report in with a lawyer, and they asserted the privilege. But it was the lawyer, it appears from what I read, who leaked, who zips out and takes down the link. On the eve of trial, yes, because the documents that were leaked. Not the client. They had the plaintiff's Exhibit 4 at the bottom, and these documents were filed with the court. They were not publicly filed, but submitted to the court only at the end of November, November 30th, 2015. And the trial started December 7th. So basically, it was provided to the media within days of trial starting. And yes, Damaskovich got the verdict because she violated two key motions and limine. And her picture was online. And it's not that the jurors were not exposed to it, because even though none of them said that they read the article, one juror said his wife looked at the newspaper online. And the first thing that juror did when he came to the court that day, he apparently notified the other jurors that the article was there. Now again, the court conducted voir dire in the middle of trial, which suspended all trial proceedings. It was extremely prejudicial to defendants. They didn't fess up. None of the jurors fessed up that they read it. But it was very prejudicial. Well, you don't know if they read it. If they said they didn't, I don't know that we should say they didn't fess up that they read it. Right. But my point is that the amount, the $260,000 verdict, we should take it with a grain of salt, because it was procured by misconduct. And it was procured by misconduct of both Ms. Damaskovich and by her lawyer. And the law is absolutely clear that the lawyer is an agent of the plaintiff. And the court notified Damaskovich that, ultimately, she would be responsible for her lawyer's misdeeds. And I do not see any support in case law whatsoever, which would say that the judge cannot change, you know, she's not able to change herself. If she had explained it, there's tons of case law that says appellate review is impossible if the district court does not furnish an explanation for its decisions so that the appellate court can see what lay behind them. We have no explanation. We have 30 pages of explanation of exactly the conduct. But it doesn't explain why she changed her opinion. Much of what had happened had already happened at the time she made the comment. Well, again, as far as the city is concerned, your Honor, and I apologize if I overspoke over you, is that the key misconduct, one of the key misconducts for the city is the testimony of the expert who was testified on behalf of all three plaintiffs. He was the, you know, he was agent of the plaintiffs as well. He testified that defendant Zura was acting as a police officer. There was no way the jury could just put it out of their minds when this particular testimony, you know, was proffered. And again, under Ramirez, the factual findings of the court, the court here, there is more than preponderance of evidence to support the district court's factual findings. And those findings were bad faith, condemnation's conduct, pervasive and severe, willful, egregious, and not entitled to presumption of unintentionality. The court did find that the misconduct was extremely prejudicial to defendants. It interfered with their ability to prepare and present their case. The court also found that plaintiffs actively participated in the misconduct, that Plaintiff Wherry exhibited bad faith in response to the court's inquiries, and that Plaintiff Tomascovich acted abusively toward the judicial process. And there is more than preponderance of evidence in the record to support the court's findings on those issues. And again, this was all done against the backdrop of this court's January 2015 decisions in Rojas. And indeed, when the case went on remand, the Rojas case went on remand in September of 2015, which was just two months before trial started in this case. The district court judge ordered public censure of Ms. Kurtz. And there were atonist fees ordered. And Ms. Kurtz was ordered to pay atonist fees to pay for the sanctions briefing for the other side. And the district court judge in this particular case, she cited case law requiring to consider lesser sanctions. And she made a specific finding that the similarity of Kurtz's behavior in Rojas to her behavior in the present case clearly demonstrates that she has made no effort to change her ways and that lesser sanctions have proved unavailing. And certainly, the judge was within her discretion, even if this court believes that a lesser sanction could have been imposed. The district court judge was within her discretion, given this court's explicit instruction in Rojas case and given Ms. Kurtz's disciplinary history to impose this sanction. And the last thing I want to say is that plaintiffs also challenged some of the evidentiary rulings on appeal. But it is the city's position that these rulings are not properly before this court at this juncture because the district court never ruled on those evidentiary issues. The district court ruled that those issues were moot, having resolved the case as a sanction. Okay. Thank you very much. Yes. Mr. Thompson. Thank you, Your Honors. Certainly. Mr. Thompson. May it please the court. My name is James Thompson. I'm here on behalf of the appellee defendant, William Zura. I was a trial attorney in this case on behalf of William Zura. And I'd like to share, if I may, Your Honor. Are you the only trial lawyer here? I think for this case. For this case, that's what I mean. Yes. If I could just share some summary of some observations from a trial lawyer's perspective. It was a simple battery case. The court's orders were very clear, very simple. They were direct. They were not confusing. And from the beginning of the case with opening statements to the end of the case with the plaintiff's retained expert, Mr. Stein, the plaintiff systematically violated the court's orders, motions and limine. They were defiant and disrespectful to the rules of procedure, to the integrity of the court. It was insulting to the members of the bar and the trial lawyers that were present in that courtroom for that trial. It literally was unbelievable. It was a once-in-a-lifetime experience as a trial lawyer. I'm fortunate to have the occasion. Were the, was the actual behavior that you, was it palpably disrespectful as well? It was, Your Honor. What I was going to suggest to you is that the... You know, we just have a dry record. I understand, but it permeated the air. As a trial lawyer, you could literally feel the contempt and disrespect and defiance by the plaintiff's attorney with respect to the most basic rules of court, orders of court and the judicial process. And during the course of the trial, I made several statements that I was astounded that this case and these lawyers and the plaintiffs were disrespecting the very court that they were seeking justice from. It was unbelievable, Your Honor. It literally was unbelievable. And when we came back on... And you could feel it. It permeated the air. When we came back on Monday morning and Judge Ellis provided us with some directions, told us what she thought about the case at that point, you would have thought that the air would have been cleared and we would have proceeded expeditiously with a simple trial. It continued. Ms. Tomaskiewicz took the stand. She was non-responsive. The court had to interject, tell her she had to answer questions. And it culminated with the retained expert providing the one opinion that he was barred from in defiance of the motions in limiting. And he admitted, brazenly, I know about the motions limiting. I did it anyway. And the only assumption that you could draw was that the plaintiff's lawyer and the expert discussed it and they intentionally, at the very end of the... After all the rulings, decided that they were going to go ahead and violate the order. And with respect, Your Honor, to the questions that you asked regarding what happened after that following day. The lines of questioning continued. It didn't change. The air still stunk of disrespect to the court, to the litigants and to the members of the bar. And ultimately, as the lawyer, I knew that what was going on was prejudicial, but you don't really feel that prejudice until that verdict comes in. Now it comes to fruition and you feel that prejudice. And that prejudice was not just the result of counsel's conduct. That prejudice was also the result of the plaintiff's conduct, the plaintiff's dishonesty. Ms. Kurtz elicited testimony right away that she didn't have any insurance, that she was poor. So you're distinguishing at this point between Tomaskiewicz and the other two plaintiffs? I am, Judge. I am distinguishing this. And you can't feel the prejudice of Ms. Kurtz and Ms. Tomaskiewicz's complicit, disrespectful conduct until that verdict comes in. And when that verdict came in, the prejudice came to fruition and it was an unjust verdict. And to allow that verdict to stand, Your Honor... Well, why not a new trial? I mean, I guess, let's assume you're right, that the verdict shouldn't stand. Just terminating the case vis-a-vis the plaintiff or having a new trial, perhaps with some stipulation that Ms. Kurtz is nowhere near it. Well, when the verdict came in, we had defeated all but one count, all the counts with respect to Ms. Fury and Ms. Sorrentino. They don't deserve a new trial. They were equally complicit in the dishonesty that took place in that courtroom. And with respect to Ms. Tomaskiewicz, the only award that she received was based upon the bills that were submitted to the court or submitted to the jury. And those bills came in on the heels of no insurance, rheumatoid arthritis, psoriasis, fused toes. It was disingenuous. Ms. Kurtz was ringing the bell from day one for sympathy to garner sympathy with respect to Ms. Tomaskiewicz. And you felt the prejudice when that verdict came in. I have never seen, humbly, I have never seen three parties in the middle of litigation at trial come into the courtroom after the proceedings were done for the day without their trial lawyer who was in the courtroom and lie to the court. Lie to the court. That's exactly what happened, Your Honor. It was brazen. It was defiant. And it affects not just the litigants and the attorneys in this case. It transcends all of us. It was an offense to the judicial system. We know the incident you're talking about. So you need to finish now. I would just encourage the court to vacate and affirm the district court's decision. To do otherwise would not only encourage the conduct of Ms. Kurtz in the future. It would also encourage the conduct of other litigants to brazenly violate court rules, the judicial process, all in the name of obtaining a monetary verdict. And it was wrong, Your Honor. All right. Thank you. Thank you very much, Mr. Thompson. So I'm not sure who has rebuttal time, but we'll hear from you guys. Mr. Cosblad. Thank you, Your Honors. What the city and Defendant Zura are arguing in this case can't be squared with the Supreme Court's decision in Goodyear and their citation to the Ramirez case, which applied a clear and convincing standard in imposing a sanction after a judgment. So a big problem with what the district court did, one of them, is that there weren't appropriate protections afforded to the litigants through due process. And that's what... But the judge's irritation with what was going on just bounces off the page. I mean, you can see that she's outraged that her motions, her rulings on the motions in limine are being disregarded, that people are changing their stories. She repeatedly has to hold side proceedings, whether it's about the Tribune article or something else. This can't have been a big surprise. There's a lot of confusion about what the district court is doing through its investigation of what's happening outside her courtroom during the course of the trial. And it's not that it's always inappropriate to do that,  if you're going to punish for things that happened outside the courtroom, such as the suggestion that a group of sworn attorneys lied to the district court about preparing their clients on the pretrial rulings. There needs to be an appropriate hearing. And wasn't it either that or the clients were lying? No, the clients and the attorneys all said they got prepared on the motions in limine with the exception of Ms. Tomaskiewicz's one answer coming on the heels of her testimony in which the district court can be seen consoling her because she's so upset about what she's testifying about. So the suggestion that that was a deliberate intent to deceive the court about what her lawyer had told her is belied by the record. And again, and I would submit that a lot of the confusion, some of it is stemming from the fact that it's hard to determine. And I could say as a trial lawyer looking at this record cold, what was actually a violation of the court's orders? For example, the suggestion that asking about requirements that police officers create police reports is a violation of an order barring evidence of the internal investigation by the city is not, they're not together. There's no connection there. It's not the same thing. There's a connection. It's a piece of foundation going in a direction you weren't supposed to go. But if a police officer is required to create a police report, it doesn't mean you're introducing evidence that the city had an internal investigation. And if that's what counsel was really trying to do, she could have explained that to the court and sought clarification rather than the repeated violations and end runs. In the context of the investigation being conducted by the district court, you know, I wish that there was a different answer on the record, but there isn't. And that's why there should have been some kind of hearing post-trial for the district court to flush out the facts. What did, I mean, the issue of sanctions based on this extraordinary trial record was front and center, right? Right. What requests did plaintiffs make for an additional opportunity to be heard? None that I'm aware of, Judge. Why should that not be conclusive then on this claim that they didn't have a fair opportunity to be heard? It can be inclusive, but it still doesn't negate the district court's responsibility to provide due process, especially when we're dealing with an inherent- We just talked about notice and opportunity having been provided, not sought by the plaintiffs. What, why is that not conclusive on your now, your due process arguments on appeal? That's not waivable. The district court- Sure it is. What do you mean? Excuse me, I misspoke. It's something the district court has an obligation to provide to the parties they're considering sanction. If Ms. Tomaskiewicz was going to be accused of lying based on the record of what transpired during the trial, she would have no reason to believe she was going to be accused of lying. Hadn't the defense made that accusation pretty explicit? That Ms. Tomaskiewicz was lying when she said that she was not advised on the pretrial rulings? Or that, and that she, and Kurtz's answers were inconsistent? The answers were inconsistent, but that doesn't mean someone's lying. We deal with inconsistent testimony from litigants all the time. It happens sometimes, and I think the courts refer to it as petty contempt occasionally. It can be that it was just an inconsistent answer in a weak moment when the plaintiff was emotional, vulnerable, and that it wasn't some effort to deceive on whether they were preparing their clients properly. And that's not something that the district court considers in the context of this, so. Okay, I think that will do. Did anybody else save rebuttal? Thank you, Judge. I think not. All right. Thank you very much, Mr. Kozleglad. Thanks to all counsel. We'll take the case under advisement.